UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| TODD WALKER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-508- LJM-WTL |
| | ) | |
| CALUSA INVESTEMENTS, LLC, d/b/a | ) | |
| NEXT DAY LOAN, | ) | |
| Defendant. | ) | |

## ORDER

This cause is before the Court on Plaintiff's, Todd Walker ("Walker"), Motion for Class

Certification.  Walker seeks certification of that class of persons with Indiana addresses to whom

Defendant, Calusa Investments, LLC, d/b/a Next Day Loan ("Calusa"), sent material in a form

similar to the mailer attached to the Complaint between March 30, 2004, and April 19, 2006.

Walker would exclude from the class those individuals who responded to the mailer and received

a loan.  Walker seeks certification pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule

23(b)(3)").  In conjunction with its response to the Motion for Class Certification, Calusa filed a

motion entitled Motion for Clarification and/or Amendment of Court's February 27, 2007[,] Order.

In addition to relying on its motion to clarify and/or amend, Calusa argues that class certification

should be denied because Walker is not an adequate representative and his claims are not typical of

those of the proposed class members.

Both motions are fully briefed and ripe for ruling.  For the reasons stated herein, the Court

**DENIES** Calusa's Motion for Clarification and/or Amendment of Court's February 27, 2007[,]

Order and **GRANTS** Walker's Motion for Class Certification.

## I. **BACKGROUND**

Although a court generally will make a determination on the suitability of class certification based on the facts alleged in the complaint, the Seventh Circuit has stated: "[A] judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). With that principle in mind, the Court will draw upon the facts alleged in the Complaint and Answer, Walker's Motion for Class Certification, Calusa's response to the motion, and, where appropriate, the declarations and attached exhibits submitted by the parties.

Walker, the named plaintiff in this case, alleges that he received a mailer from Calusa that stated that it was a "'prescreened' offer of credit based on information in [his] credit report" and that listed an amount of $102,850.00 on a faux check. Compl., ¶ 7 and Ex. A. Walker contends that a Calusa sent a similar mailer to more than 200 Indiana residents. *See id.*, ¶ 16; *see also* Answer, ¶¶ 6, 16. Calusa admits that it prescreened "prospective borrowers" based upon information it received from consumer reporting agencies and that it caused the mailers to be sent to Walker and other Indiana residents. *See* Answer, ¶¶ 9-10; Shumway Decl., ¶¶ 4-8, 10. Calusa concedes that roughly 27,406 individuals with Indiana mailing addresses received similar mailers listing an amount of $102,850.00. *See* Shumway Decl., ¶ 14. Calusa further admits that other consumers in Indiana received mailers with amounts ranging from $102,850.00 up to $475,000.00. *See id.*, ¶ 11.

Walker contends that Calusa accessed his credit report and the putative class members' credit reports without authorization and without any permissible purpose under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq. See* Compl., ¶¶ 18-20, 26. More specifically, Walker argues that the mailer does not qualify as a "firm offer of credit" within the meaning of FCRA and that Calusa willfully violated FCRA. *See id.*, ¶¶ 28-29. The Court previously denied Calusa's

2

Motion for Judgment on the Pleadings based on its contention that the mailer constituted a firm offer of credit.  *See* February 27, 2007, Order on Def.'s Mot. for J. on the Pleadings (Docket No. 48). Walker seeks, *inter alia*, statutory damages permitted under 15 U.S.C. § 1681n, which range from $100.00 to $1000.00.  *See* Compl., ¶ 30.


## II.  <u>STANDARDS FOR CLASS CERTIFICATION</u>

Certification of a class is governed by Rule 23.  The propriety of class certification does not depend on the outcome of the suit or on whether a party will prevail on the merits but whether the requirements of Rule 23 are met.  *See Eisen v. Carlisle*, 417 U.S. 156, 177-78 (1974); *Chavez v. Ill. State Police*, 251 F.3d 612, 620 (7th Cir. 2001).  To show that class certification is justified in this case, Walker must first satisfy the four requirements of Rule 23(a).  *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 475 (7th Cir. 1997).  The prerequisites in Rule 23(a) are:

> (1)  the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Once the Court determines that Walker has satisfied these prerequisites, then the Court must determine whether he meets one or more of the requirements of Rule 23(b).  *See Williams*, 204 F.3d at 760; *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).  Because Walker seeks certification pursuant to Rule 23(b)(3), he must demonstrate that common question predominate and that class action will be superior to other available methods of resolving the

controversy.  *See* Fed. R. Civ. P. 23(b)(3).[1]

The Court will address whether Walker has met the prerequisites to class certification defined by Rule 23(a); it will then turn to his arguments with respect to Rule 23(b) if necessary.

## III.  DISCUSSION

### A.  CALUSA'S MOTION TO CLARIFY AND/OR AMEND

Before turning to an analysis under Rule 23, the Court addresses Calusa argument that the Court's February 27, 2007, Order should be clarified or amended.  Calusa relies in part on this argument to support its contention that class certification is inappropriate.  Specifically, Calusa asserts that the Court improperly decided the merits on Walker's liability claim by concluding that the mailer was not a firm offer.  Calusa complains that the Court's Order deprived Calusa of the opportunity to seek summary judgment on this issue "based on the evidence adduced through discovery."  Calusa's Mem. in Opp. at 19.  Further, Calusa states that the Court's Order creates "a one-way intervention problem that precludes class certification."  *Id.* at 19-20, n. 13.

As an initial matter, Calusa' argument is somewhat disingenuous.  In conjunction with its opposition to class certification, Calusa submitted the Declaration of Devan Shumway.  A close reading of the declaration, as well as the background discussed in Calusa's memorandum in opposition, reveals that the bulk of the declaration is intended to support Calusa's claim that the

---

[1]  The Court recognizes that the Complaint requests both injunctive and monetary relief.  Although the parties have not addressed this circumstance in the context of class certification, the Court is cognizant of the Seventh Circuit's instructions in *Lemon v. International Union of Operating Engineers*, 216 F.3d 577, 580-82 (7th Cir. 2000), that a district court consider three options for class certification when faced with this situation.  The Court concludes that Rule 23(b)(3), with its individual notice and opt-out requirements provided by Rule 23(c)(2)(B), is the appropriate mechanism for deciding these issues and, accordingly, will limit its analysis to this subsection.

4

mailer was a firm offer.  In essence then, Calusa relies on the declaration, a document outside of the pleadings, to support its argument that the Court's February 27, 2007, Order should be amended or clarified.  Thus, the effect of Calusa's argument is to convert its request into one for summary judgment, which leads exactly to the scenario with which Calusa takes issue, *i.e.*, a merits decision on whether there was a "firm offer."

In addition to that problem, Calusa's complaints about "one-way intervention" and merits determination prior to class certification are not well-taken.  The Court reminds Calusa that it filed the motion for judgment on the pleadings and specifically requested that all proceedings, including discovery and briefing on class certification, be stayed until that motion was resolved.  *See* Mot. to Stay Discovery & Further Proceedings (Docket No. 36).  Calusa's request to stay the proceedings was granted, and so any perceived abnormality in the proceedings at this point is largely due to Calusa's own making.

Further, the Court is unpersuaded that its Order needs amended or clarified.  The parties' briefing on the motion for judgment on the pleadings focused almost exclusively on the mailer itself.  Both sides urged the Court to resolve the issue of whether the mailer was a "firm offer."  Moreover, the resolution of that dispute was largely a legal one.  As the Court noted, the Seventh Circuit has explicitly stated that in order to determine whether a defendant has complied with FCRA and made a "firm offer," courts "need only determine whether the four corners of the offer satisfy the statutory definition . . . and whether the terms are honored when consumers accept."  Feb. 27, 2007, Order on Def.'s Mot. for J. on the Pleadings at 6 (Docket No. 48) (quoting *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 956 (7th Cir. 2006), *reh'g and reh'g en banc denied*).  Because an examination of the four corners of the mailer demonstrated that there were insufficient terms for a firm offer, there was really no need to inquire into whether the terms would be honored.  *See*, *e.g.*, *Murray v.*

*GMAC Mortgage Corp.*, 483 F. Supp. 2d 636, 649 (N.D. Ill. 2007) (stating during analysis of motion for summary judgment that it was "impossible to consider the second step in the analysis here, as the mailing is so unlike a firm offer that there are essentially no terms that could be honored"). Thus, to the extent the Order was a merits determination, the result was due to the parties' arguments and because of the nature of the issue confronting the Court.[2]

As a final matter, Calusa is incorrect that the Court's Order is a final liability determination. Walker, and any class that is certified, must demonstrate that Calusa willfully violated FCRA in order to receive statutory damages, punitive damages, or costs and attorneys' fees. *See* 15 U.S.C. § 1681n. That issue remains pending in this case, and Calusa is still free to engage in discovery or seek summary judgment on that point. In fact, it appears that several of the items that Calusa contends that it wishes to develop bear largely on that issue. *See* Calusa's Mem. in Opp. at 19.

Based on the foregoing reasons, Calusa's request to clarify or amend the February 27, 2007, Order is **DENIED**.

---

[2] The Court is also unpersuaded by Calusa's recently tendered Supplemental Authority referring to a Western District of Pennsylvania decision granting a motion to dismiss. The basis for that decision is unclear because that court's reasoning is contained in a transcript, which is not currently available. Regardless of the reasoning, that decision is not binding precedent in the Seventh Circuit where the law is that an offer of credit must have value to a consumer in order to constitute a firm offer of credit. *See GMAC Mortgage Corp.*, 434 F.3d at 955; *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 726-27 (7th Cir. 2004).

## B.  RULE 23(a) PREREQUISITES

Having concluded that Calusa's motion to clarify and/or amend the Court's February 27, 2007, Order should be denied, the Court can proceed to analyze the issue of class certification under Rule 23.  Walker has brought this suit on behalf of that class of persons with Indiana addresses to whom Calusa sent a mailer similar to the one that he received between March 30, 2004, and April 19, 2006, and who did not respond to the mailer and receive a loan.  The Court must first consider whether Walker's proposed class meets Rule 23(a)'s prerequisite conditions for class certification.

### 1.  <u>Numerosity</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Although there is no "magic number" for numerosity purposes, joinder is considered impractical when a class numbers at least forty members.  *See Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969).  Walker is not required to specify the exact number of persons in the class.  *See Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989); *Hurd v. Monsanto*, 164 F.R.D. 234, 238 (S.D. Ind. 1995).  However, he cannot simply rely on conclusory allegations that joinder is impractical or upon speculative allegations as to the size of the class to satisfy numerosity.  *See Marcial*, 880 F.2d at 957; *Hurd*, 164 F.R.D. at 238.

In this case, Calusa wisely has not contested whether numerosity is satisfied.  Walker alleged, and Calusa admitted, that at least 200 individuals received similar mailers.  *See* Compl., ¶ 16; Answer, ¶¶ 6, 16.  In fact, Calusa has submitted evidence that roughly 27,406 individuals with Indiana mailing addresses received mailers that listed the same amount for a proposed loan as the mailer that Walker received.  *See* Shumway Decl., ¶ 14.  In addition, Calusa has admitted that other consumers in Indiana received mailers that listed other amounts.  *See id.*, ¶ 11.  Based on the

foregoing, the Court easily concludes that the numerosity requirement for class certification is met in this case.

## 2. **Commonality**

To satisfy Rule 23(a)(2)'s requirement of commonality, Walker must show "'[a] common nucleus of operative fact.'" *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), *cert. denied* 506 U.S. 1051 (1993)). "Common nuclei of fact are typically manifest where . . . the defendant[] [has] engaged in standardized conduct towards members of the proposed class by [presenting] to them allegedly illegal form letters or documents." *Id.* (citing *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D. Ill. 1995); *Heartland Commc'ns., Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D. Kan. 1995); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983)). Although factual variations among class members may inform the "predominance" inquiry pursuant to Rule 23(b)(3), generally, such variations do not defeat the commonality requirement. *See id.* (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir.), *cert. denied*, 451 U.S. 914 (1980)); *Rosario*, 963 F.2d at 1017 (citing *Patterson*, 631 F.2d at 481). Indeed, the commonality requirement does not require that every putative class member have every issue of fact and law in common. *See id.*

Calusa does not challenge the commonality requirement. Walker contends that Calusa violated FCRA by accessing the class members' credit reports without authorization and by failing to make a "firm offers of credit" to the class. *See* Compl., ¶¶ 18-20, 26, 28-29. He contends that the class members received mailers similar to the one that he received. *See id.*, ¶¶ 7, 16 and Ex. A. Calusa admits that it prescreened "prospective borrowers" based upon information it received from consumer reporting agencies and that it caused the mailers to be sent to Walker and other Indiana

8

residents.  *See* Answer, ¶¶ 9-10; Shumway Decl., ¶¶ 4-8, 10.  Calusa likewise admits that it sent similar mailers to numerous Indiana residents.  *See* Answer, ¶¶ 6, 16; Shumway Decl., ¶¶ 11, 14. The Court concludes that whether the mailers comply with FCRA and whether Calusa willfully violated FCRA provide common issues of fact and law that are applicable to all members of the putative class.  Accordingly, the Court finds that Walker has made a sufficient showing that the commonality requirement has been met.

### 3.  Typicality

Rule 23(a)(3) requires that Walker demonstrate that his claim is typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  A claim "'is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'"  *Keele*, 149 F.3d at 595 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (other citations omitted in original)).  Typicality is closely related to the commonality inquiry.  *See id.* (citing *Rosario*, 963 F.2d at 1018).  "[F]actual distinctions between the claims of the named class member[] and those of other class members" do not necessarily defeat a finding of typicality.  *De La Fuente*, 713 F.2d at 233.  The Court must focus on "'whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'"  *Retired Chi. Police Ass'n*, 7 F.3d at 597 (quoting *De La Fuente*, 713 F.2d at 232)) (other citations omitted).

9

Calusa argues that Walker cannot satisfy the typicality requirement because some Indiana residents received mailers offering loans in amounts greater than what he received.[3] By making this argument, Calusa is implicitly conceding that Walker meets the typicality requirement for those individuals who received a mailer offering the exact same amount. The only question then is whether Walker can satisfy the typicality requirement with respect to those individuals who received mailers offering greater amounts.[4]

The Court concludes that differing amounts in the various mailers do not make Walker's claim atypical. In fact, because Walker is seeking statutory damages, the exact amount offered is somewhat irrelevant. Specifically, regardless of the exact amount listed in the mailer, all Indiana residents who received a mailer in a form similar to the one received by Walker have a claim based on an alleged willful violation of FCRA. There does not appear to be any dispute that Calusa employed a similar prescreening process for "prospective borrowers" based upon information it received from consumer reporting agencies. *See* Answer, ¶¶ 9-10; Shumway Decl., ¶¶ 4-8, 10. Thus, each class member has a potential claim that Calusa accessed his or her credit information in violation of FCRA. The primary facts and legal questions are identical in each case. Therefore, Calusa's arguments to the contrary notwithstanding, the Court concludes that the stated amount on individual mailers is a minor factual discrepancy that does not change the nature of the claims of the

---

[3] Calusa also relies on this argument to support its contention that Rule 23(b)(3)'s predominance factor has not been met. The Court addresses that factor in more detail below.

[4] Although Walker in his reply seems to retract from his initial proposed definition of the class in his Complaint and motion for class certification, the Court concludes that there is no reason at this juncture to limit the class to those individuals who received mailers listing the same amounts as Walker so long as the language employed, *i.e.*, the form of the mailer, was otherwise the same, because the determination of whether those mailers violated FCRA should be the same in each case.

putative class. Instead, the Court concludes that Walker's claim has "the same essential characteristics" of the class members and, accordingly, that typicality has been established. *See*, *e.g.*, *GMAC Mortgage Corp.*, 483 F. Supp. 2d at 643-44.

### 4. <u>Adequacy of Representation</u>

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement entails a two-party inquiry. *See Retired Chi. Police Ass'n*, 7 F.3d at 598. First, the Court must determine whether Walker's chosen counsel can fairly represent the interests of the putative class. *See id.* Second, the Court must determine whether the named plaintiff, *i.e.*, Walker, will protect the interests of the putative class members. *See id.* (citing *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (*en banc*)). In other words, Walker cannot make claims that are antagonistic to or in conflict with the claims of other class members. *See id.*; *Rosario*, 963 F.2d at 1018.

Calusa does not dispute that Walker's chosen counsel can fairly represent the interests of the putative class. Indeed, the circumstances suggest that counsel at the firm of Edleman, Combs, Latturner, & Goodwin, LLC, are capable of representing the class in this case. They have prosecuted numerous class action lawsuits. *See generally*, Edelman Decl. In particular, they have represented plaintiffs in several FCRA cases in the Seventh Circuit. *See*, *e.g.*, *GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Murray v. Indymac Bank, F.S.B.*, 461 F. Supp. 2d 645 (N.D. Ill. 2006); *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392 (N.D. Ill. 2006); *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006); *Kudlicki v. Capital One Auto Fin., Inc.*, No. 06 C 1918, 2006 WL 3210492 (N.D. Ill. Nov. 2, 2006). In fact, the Northern District of Illinois recently noted counsel's "extensive practice focused on consumer protection issues" and the "numerous FCRA

11

cases" that counsel had litigated, when the court found that counsel was qualified and able to fairly represent the interests of the class. *GMAC Mortgage Corp.*, 483 F. Supp. 2d at 644. The Court agrees with that conclusion and, accordingly, finds that Walker's chosen counsel is capable of representing the putative class in this case.

While Calusa has not challenged the adequacy of counsel, Calusa does contend that Walker is an inadequate representative for the class. Calusa argues that Walker's deposition testimony "contradicts the allegations of [Walker's] Complaint and otherwise evinces a lack of understanding of his claim." Calusa's Mem. in Opp. at 12. More specifically, Calusa asserts that Walker admits that the mailer was a "firm offer," thereby negating an essential element of his claim, and therefore Walker is an inadequate representative. Calusa cites to the following excerpts in support of its argument:

> Q:   So [the mailer] says in multiple places language from which you understood you were being offered a mortgage loan?
>
> A:   Yes.
>
> *   *   *
>
> Q:   So did you understand that you were preapproved for a mortgage loan?
>
> A:   I was preapproved for the equity or mortgage loan.
>
> *   *   *
>
> Q:   What did it mean to you when you read at the top the term "$102,850.00," and directly underneath "Status preapproved"?
>
> A:   What did it mean to me?
>
> Q:   What did you understand it to mean?
>
> A:   I understood it to mean that I am preapproved for $102,850.

Walker Dep. at 31, 33.

Standing alone, these excerpts appear to support Calusa's arguments; however, when Walker's testimony is viewed as a whole, it is clear that Walker was discussing certain portions of the mailer in isolation rather than his view of the entire document.  In fact, later in his testimony, Walker was quite clear that he did not view the mailer as a firm offer because it lacked specific terms relevant to him and that the mailer was just a solicitation.  A review of the following excerpts illustrates this point:

Q:      Do you see underneath that where it says, "The interest on your loan may be tax deductible"?

A:      Yes.

Q:      Is that another indication that you were being offered a mortgage loan?

A:      Actually, it's fair to say that this is not a definite offer.

* * *

Q:      Now, the chart contains, between the words "Your Current Monthly payments" and the words "Your New Lower Monthly Payment," what does that chart mean?  Do you understand what it's demonstrating?

A:      It's just a generic example.

* * *

Q:      So what's generic about it?  Are the numbers in the column under balance, are those generic?  This is not the -- let's start here where it says "Balance, Existing Mortgage."  Is that a statement of your mortgage?  These numbers don't relate to your personal financial situation do they?

A:      No.

Q:      Is that what's generic about the chart?

A:      Yes.  There's no definite offer here.

* * *

Q:      Now, you've already testified that you understood you were being offered a

13

loan of $102,850.  What did you understand all of these loan terms to be, the ones -- 5.99 rate, the APR of 8.53, and the term of 360 months?

A:    I just understood them to be, there again, just a -- generic terms for this example on this chart we just talked about.

Q:    What's your basis for concluding that?

A:    The basis is there's no terms for me to go by.  There's nothing here.  There's no terms of payment.  It just says I'm preapproved.  No terms of how it's paid back, the length of time it's to be paid back.

* * *

Q:    Why was the rate of 5.99 percent, the APR of 8.53 percent and term of 360 months not applicable to you?

A:    Like I said, there's no definitive offer here.  This is not based on my credit; this is just a generic form.  The words "pre-approved" is just to get me sucked in on this.

* * *

Q:    What can you point to here that tells me affirmatively that these terms did not apply to you?

A:    The words -- this is the example.  It is an example.

* * *

Q:    Okay.  What else can you point to on the page to indicate that these terms, the rate of 5.99 percent, the APR of 8.453 and the term of 360 months were not applicable to you?

A:    Like I said, this is an example.  Example is not definitive.  It's an example.

* * *

Q:    I know you've done this a little before, but can you describe your claim against Calusa?

A:    My claim, like I said before, there's no firm offer here.  I believe they are breaking the law when, without permission, they run a check through the credit bureau report, mine and other members that's involved in this.

14

* * *

Q:      So, I would imagine you have some understanding of what a firm offer of credit is if you can look at a document and tell me what isn't a firm offer of credit. So what is a firm offer of credit?

A:      A firm offer of credit is, like I said, it's terms. It tells me the kind of credit I'm getting, what it's going to cost me, what is the interest rate, when payment is due, when -- how long do I have to pay this loan. It doesn't say that in here anywhere.

* * *

Q:      Okay. So is that the reason you sent -- that you became -- that you decided this is not a firm offer of credit, because it didn't contain particular terms in the way you read it?

A:      These terms do not apply directly to me. These terms were sent out to over a couple hundred people, the same flier.

*Id.* at 31-32, 38-39, 41-42, 44, 50, 53-54.

These additional excerpts demonstrate that Walker was not admitting that the mailer was a "firm offer" or disavowing any essential elements of his claim. Instead, they show that Walker is adamant that the mailer was not a "firm offer" but a solicitation, a "sham" to pitch a product and to try to justify accessing credit histories to identify potential borrowers. They also reveal Walker's belief that missing terms undermine any value of the mailer to a consumer, a concept that the Seventh Circuit has advised is at the heart of the definition of a "firm offer." *See GMAC Mortgage Corp.*, 434 F.3d at 955; *Cole*, 389 F.3d at 726-27.

In addition, Walker's testimony demonstrates that he understands the bases for his Complaint, that he is dedicated to this action, and that he understands his obligation to protect the interests of the putative class members. *See* Walker Dep. at 41-42, 59, 82, 87, 99-100. The Court is convinced that Walker has more than sufficient knowledge of the circumstances of his case to serve as class representative. *See Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*,

657 F.2d 890, 896 (7th Cir. 1981), *reh'g and reh'g en banc denied* (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966)).  In light of the foregoing, the Court finds that Walker is an adequate representative for the class.

## C.  RULE 23(b)(3) REQUIREMENTS

Having concluded that Walker has demonstrated that the prerequisites of Rule 23(a) are satisfied, the Court must now determine whether the requirements of Rule 23(b)(3) are met.  Rule 23(b)(3) provides that certification of a class is proper when a "court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  *See also Lemon*, 216 F.3d at 581.  The primary focus under this subsection of Rule 23 is whether class-wide adjudication would be more efficient than individual adjudication.  *See Lemon*, 216 F.3d at 581.  To assist with making that determination, courts consider the following four factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  Further, certification under Rule 23(b)(3) requires that each putative class member receive individual notice of the class action and an opportunity to opt out if the class member so desires.  Fed. R. Civ. P. 23(c)(2).

### 1. <u>Predominance</u>

The predominance factor is more demanding than the commonality requirement of Rule 23(a)(2). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997).  It requires consideration of the proof necessary to support the substantive elements of a plaintiff's claims and the form that trial on these issues would take.  *See Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981).  If individual issues predominate over common questions, then a class action generally is not a superior method for resolving the controversy because managing the disparate issues will be inefficient.  *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001).

Here, Walker alleges that Calusa violated FCRA when it requested or accessed the proposed class members' consumer credit reports without their consent and without a lawful reason because Calusa's mailers do not constitute "firm offers of credit."  *See* Compl., ¶¶ 18-20, 26-29.  Similar to its argument on the typicality factor under Rule 23(a)(3), Calusa contends that the predominance factor is lacking because some Indiana residents received mailers offering loans in amounts greater than what Walker received.  Just as it did with its argument on typicality, Calusa is implicitly acknowledging that the factor is satisfied with respect to those individuals who received mailers for the same amount as Walker.  Thus, the only question is whether Walker can satisfy the requirement with respect to those individuals who received mailers offering greater amounts.

The Court concludes that the predominance factor is satisfied in this case.  Again, the essential facts are clear and applicable to each and every putative class member.  In short, Calusa is accused of accessing consumer credit reports and sending mailers to numerous individuals that were not "firm offers of credit."  It appears that the intent in accessing the information and sending the mailers would be the same for each member of the class.  Further, the primary facts and legal questions are identical.  It's not clear that any individualized determinations would be necessary or

17

that they would predominate in this case.  Indeed, as the Northern District of Illinois recently
observed, the legal issues involved in cases such as this do not require a case-by-case analysis of
each consumer who received such a mailer, and to attempt to do so would be both wasteful and
inefficient.  *See GMAC Mortgage Corp.*, 483 F. Supp. 2d at 645 (discussing observations from
Seventh Circuit's opinion prior to remand in *GMAC Mortgage Corp.*, 434 F.3d at 955-56).
Moreover, it bears repeating that Walker and the proposed class are seeking statutory damages, so
any individualized inquiry on damages is probably unnecessary in this case.  In light of the
foregoing, the Court finds that common issues of law and fact predominate over individual inquiries
and, therefore, that the predominance factor is satisfied.

## 2. <u>Superiority</u>

The final factor to consider is whether a class action is superior to other available methods
for adjudicating this case.  Although Calusa has made no argument with respect to this factor,
Walker contends that a class action to resolve the dispute would be superior to individual claims.
The Court agrees.

Consumer claims, like those involved in this case, are commonly certified for class treatment
because of the difficulty of bringing such claims individually and the common questions that are
often involved in such suits.  *See Amchem Prods.*, 521 U.S. at 625; *In re Mex. Money Transfer Litig.*,
267 F.3d 743, 747 (7th Cir. 2001).  In fact, there is a strong presumption in favor of a finding of
superiority when the alternative to a class action is likely to be no action at all for the majority of
class members.  *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).  Here,
Walker asserts that many class members may be unaware of their claim.  Alternatively, some of
those members may not feel that it is worth the effort to file an individual suit seeking statutory

18

damages of between $100.00 and $1000.00. Given the likely possibility that few of the class members' claims would be vindicated on an individual basis, there is little doubt that a class action is superior to other methods of proceedings. Indeed, the Seventh Circuit has suggested that Rule 23(b)(3) is designed for cases such as this one. *See GMAC Mortgage Corp.*, 434 F.3d at 953. Therefore, the Court concludes that the superiority factor has been satisfied.

### D.  SUMMARY

Walker has met all for of the prerequisites of Rule 23(a) for class certification. Moreover, the Court concludes that he has demonstrated that certification is appropriate pursuant to Rule 23(b)(3). Accordingly, the Court **GRANTS** Walker's motion for class certification. The class shall consist of those individuals to whom Calusa sent a mailer in a form similar to the mailer attached to Walker's Complaint between March 30, 2004, and April 19, 2006, and excludes those who responded to the mailer and received a loan.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's, Calusa Investments, LLC, d/b/a Next Day Loan,

Motion for Clarification and/or Amendment of Court's February 27, 2007[,] Order (Docket No. 52)

is **DENIED**.

In addition, Plaintiff's, Todd Walker, Motion for Class Certification (Docket No. 18) is

**GRANTED**.  The class consists of those individuals residing in Indiana to whom Calusa sent a

mailer in a form similar to the mailer attached to Walker's Complaint between March 30, 2004, and

April 19, 2006, but excludes those who responded to the mailer and received a loan.  The Court

**APPOINTS** the firm of Edleman, Combs, Latturner, & Goodwin, LLC, as counsel for the class.

IT IS SO ORDERED this 23rd day of July, 2007.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

R. Bruce Allensworth
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
bruce.allensworth@klgates.com

Gregory N. Blase
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
gregory.blase@klgates.com

Cory Stephen Brundage
cb@brundagelaw.com

Cathleen Maria Combs
EDLEMAN COMBS LATTURNER & GOODWIN LLC
ccombs@edcombs.com

Daniel A. Edelman
EDLEMAN COMBS LATTURNER & GOODWIN LLC
dedelman@edcombs.com

Brian M. Forbes
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
brian.m.forbes@klgates.com

Irene C. Freidel
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
irene.freidel@klgates.com

James O. Latturner
EDLEMAN COMBS LATTURNER & GOODWIN LLC
jlatturner@edcombs.com

Cassandra P. Miller
EDLEMAN COMBS LATTURNER & GOODWIN LLC
cmiller@edcombs.com